UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT D. MITCHELL,                          No. 06-13160

        Plaintiff,                          District Judge David L. Lawson

v.                                           Magistrate Judge R. Steven Whalen

WASHTENAW COUNTY SHERIFF'S
DEPARTMENT, COUNTY OF
WASHTENAW, DEPUTY ROWLEY,
SERGEANT ARMSTRONG in their
Individual and Official Capacities, jointly
and severally,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Albert Mitchell, a resident of Ann Arbor, Michigan,  filed the instant action

on July 11, 2006 alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment

rights pursuant to 42 U.S.C. §1983 as well as various state law claims.  Before the Court is

Defendants' *Motion for Summary Judgment* [Docket #38] filed March 21, 2008, which has

been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For

the reasons set forth below,  I recommend the following:

Count I: Defendants' motion should be GRANTED as to state law claims of ordinary

negligence and gross negligence.

Count II: The motion should be GRANTED as to the state law allegation of negligent infliction of emotional distress and DENIED as to the intentional infliction of emotional distress claim.

Count III: The motion for dismissal of the state law claim of malicious prosecution should be DENIED.

Count IV: The motion for dismissal of the state law claim of false imprisonment/false arrest should be GRANTED.

Count V: The motion for dismissal of Plaintiff's Due Process and Equal Protection claims under the Fourteenth Amendment should be GRANTED.

Count VI: The motion for dismissal of the Fourth Amendment claims, including excessive force, should be DENIED.

Count VII: The motion for dismissal of the federal claim of malicious prosecution/abuse of process should be DENIED.

Count VIII:  The motion for dismissal of the municipal liability claims against the County of Washtenaw should be GRANTED.

I further recommend that the Washtenaw County Sheriff's Department be DISMISSED as a Defendant.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Second Amended Complaint, filed January 23, 2007 [Docket #23] alleges as follows.  On July 11, 2003 at approximately 2:00 a.m., Defendant Armstrong, a Washtenaw County Sheriff's Department Sergeant, observed Plaintiff driving northbound on Eugene Street, Ypsilanti, Michigan.  *Amended Complaint* at ¶¶9-10.  Defendant Armstrong followed Plaintiff's car for approximately one block, shining a flashlight toward

the car in an attempt to see the occupants of the Plaintiff's vehicle. *Id.* at ¶11. Armstrong, allegedly noting that Plaintiff was speeding, then signaled for Plaintiff to pull over. *Id.* at ¶13. Plaintiff, eventually complying with Armstrong's signal to pull over, produced his driver's license, informing the officer that he had been visiting a friend in Ypsilanti and that he was en route to his home in Ann Arbor. *Id.* at ¶¶14-18. A LEIN inquiry by Armstrong showed no outstanding warrants. *Id.* at ¶19. Despite the LEIN results, Plaintiff alleges that Armstrong "continued, without probable cause, to needlessly question and harass [him] about his whereabouts" and "for no apparent reason . . . called in to dispatch to [request] back-up to come to the scene to further harass Plaintiff with no probable cause." *Id.* at ¶¶21-22. Shortly after, four other Washtenaw County Sheriff deputies, including Defendant Rowley, arrived on the scene. *Id.* at 23. Plaintiff, alleging that he was "very afraid due to the number of officers called to the scene for what seemed to Plaintiff a racially motivated . . . event, refused to consent to what he believed was an illegal search of his car." *Id.* at ¶25. Defendant Rowley, walking to the passenger side of Plaintiff's vehicle, stated that he could see marijuana residue on the floorboard of the vehicle. *Id.* at ¶27. Plaintiff, aware that his vehicle did not contain drugs, and apparently fearing that officers would plant drugs in his car, requested a canine search for the purpose of ascertaining the absence of drugs. *Id.* at ¶28. Defendant Armstrong, still on the driver's side of the vehicle, allegedly attempted to reach into the vehicle to turn off the ignition, despite the fact that Plaintiff "was not attempting to flee the scene or act aggressively toward [Armstrong]."*Id.* at ¶¶29-30. Defendant Armstrong then broke the driver's side window with his flashlight, causing

injuries to Plaintiff from the shattered glass  *Id.* at ¶¶31-33.   He alleges that he was "violently removed from his vehicle by several deputies, thrown to the ground and arrested." *Id.* at ¶32.  Plaintiff was charged with resisting and obstructing arrest, but was found not guilty in a jury trial.  *Docket #38,* Exhibit 3 at 87.  Plaintiff alleges gross negligence, negligent and intentional infliction of emotional distress, malicious prosecution and false imprisonment, as well of violations of his Fourth and Fourteenth Amendment rights under the U.S. Constitution, seeking damages as a result of physical injuries, pain, suffering, and emotional distress, post-traumatic stress disorder, and injuries to his reputation.

Plaintiff, originally proceeding *pro se*, filed the Second Amended Complaint [Docket #23] on January 23, 2007 after obtaining counsel.  On February 16, 2007, the Honorable David M. Lawson adopted the undersigned's Report recommending that because the Second Amended Complaint dropped its claim regarding the Washtenaw  County Prosecutor's Office, the August 2, 2006 *Motion to Dismiss* [Docket #7] by same should be denied as moot. *Docket #27, 29.*   Plaintiff has not responded to the present motion.[1]

## II.  STANDARD OF REVIEW

---

[1] The Defendants' motion was filed on March 21, 2008.  Plaintiff's counsel moved orally to file a response to the motion approximately 11 months later, on February 3, 2009, the date of oral argument.  I denied the motion and ordered the Plaintiff's response stricken, although I permitted counsel to argue.  While the failure to respond to a summary judgment motion would usually result in the motion being granted, it is still the moving party's duty to show the absence of questions of material fact. In this case, however, it is the Defendants' own exhibits that show questions of fact as to certain claims.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at

252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party

cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at

322-23.

### III.  ANALYSIS[2]

#### A.   Defendant Washtenaw County Sheriff's Department

Defendant Washtenaw County Sheriff's Department contends that allegations against

it are dismissible on the basis that "it is not a recognized legal entity capable of being sued."

*Docket #30*, 6; *Hughson v. County of Antrim*, 707 F. Supp. 304 (W.D. Mich 1995).

In dismissing the Antrim County Sheriff's Department from suit, *Hughson* 707

F.Supp. at 306 (W.D.Mich.,1988) held as follows:

> "Michigan is a jurisdiction in which the sheriff and prosecutor are
> constitutional officers, and there does not exist a sheriff's department or a
> prosecutor's office. Instead, the sheriff and the prosecutor are individuals,
> elected in accordance with constitutional mandates. Mich. Const. Art. 7, § 4.
> Since the sheriff's department and the prosecutor's office do not exist, they
> obviously cannot be sued."

*See also Luster v. Macomb County Sheriff's Jail,* 2007 WL 1219028, *2  (E.D.Mich.2007)

(Duggan, J.); *Coopshaw v. Lenawee County Sheriff's Office of Lenawee County,* 2006 WL

3298898, *6 (E.D.Mich.2006)(Cox, J.); *Vine v. County of Ingham,* 884 F.Supp. 1153, 1158

---

[2]

Because the disposition of the state law counts depends upon the constitutional
analysis, the Court examines the counts out of the sequence found in the Amended
Complaint.  However, for ease of reference,  both this R&R's introduction and conclusion
list the counts in numerical order.

(W.D.Mich.1995)(a sheriff's department is "simply an agency of the county, not a separate legal entity" and thus cannot be sued).  As such, claims against the Sheriff's Department should be dismissed.

### B.   Fourth Amendment Violations[3]

Defendants dispute Plaintiff's allegations that the traffic stop or arrest violated his Fourth Amendment rights, contending first that Armstrong had both probable cause for a traffic stop,  *Defendants' Brief* at 12 (*citing United States v. Townsend,* 305 F.3d 537, 541 (6th Cir. 2002), and reasonable suspicion for a *Terry*[4] stop.  *Id.* at 13 (*citing Illinois v. Gates,* 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335, 76 L.Ed. 2d 527 (1983).  Defendants allege that  Armstrong observed Plaintiff  speeding before stopping him.  *Id.* at 13, *Docket #38*, Exhibit 1.  Defendants point out that Plaintiff's car had tinted windows, a "punched trunk lock" (suggesting that the car had been stolen), and that Plaintiff was taking an unusual route through a high-crime area at "a late time of night."  *Id.*  at 13.

### 1.  The Traffic Stop

Defendant Armstrong's traffic stop, by itself, does not amount to a violation of

---

[3] In Count VI of the complaint, which addresses the allegations of improper arrest, search, and excessive force, Plaintiff, apparently not wanting to miss anything, asserted that he was deprived of his rights under the First, Fourth, Fifth and Fourteenth Amendments, as well as provisions of the Michigan constitution.  As discussed *infra*, however, with the exception of the equal protection claim, the constitutional claims in this Count are properly analyzed under the Fourth Amendment, made applicable to the States by the Fourteenth Amendment.

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Plaintiff's Fourth Amendment rights.  At his criminal trial, Plaintiff disputed Armstrong's claim that he was speeding, noting further that  his vehicle's tinted windows did not violate Michigan's Motor Vehicle Code.  *Docket #38,* Exhibit 2 at 102.  However, the missing lock mechanism and the reasonable belief that the windows were unlawfully tinted presented probable cause for the traffic stop.  *Id.,* Exhibit 2 at 15, 54.  Police stops based on probable cause that the motorist has commit a traffic violation are lawful.  *See Illinois v. Caballes* --- U.S. ---, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2007).  Moreover, although Plaintiff claims in effect that Armstrong had an ulterior motive for stopping him, "an individual officer's subjective intentions are irrelevant to the Fourth Amendment validity of a traffic stop that is justified objectively by probable cause to believe that a traffic violation has occurred." *City of Indianapolis v. Edmond,* 531 U.S. 32, 45, 121 S.Ct. 447, 456, 148 L.Ed.2d 333 (2000); *Whren v. United States,* 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

### 2.  Plaintiff's Continued Detention

However, a factual dispute exists as to whether  Defendant Armstrong was entitled to detain Plaintiff after fulfilling his purported reasons for the traffic stop   While "[t]he law is settled that [even though] in Fourth Amendment terms a traffic stop entails a seizure of the driver . . . 'the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. California,* — U.S. --- 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132(2007); *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *see also Whren v. United States, supra*, 517 U.S. at 809-810.

Significantly, at the point that Armstrong says he returned to Plaintiff's car and

-8-

continued to question Plaintiff, he had already discovered that his purported suspicions that the car was stolen and the windows' tint violated the Motor Vehicle Code were both unfounded.  Armstrong testified that Plaintiff nonetheless "wasn't free to go" after the LEIN search was completed showing that both Plaintiff and his vehicle were clear.  *Docket #38,* Exhibit 2 at 42.  In support of the continued detention, Armstrong testified that he suspected criminal activity justifying further investigation before completing the driver's license check and LEIN inquiry associated with the traffic stop.  *Docket #38,* Exhibit 1 at 2, Exhibit 2 at 23.  Armstrong testified that although Plaintiff claimed that he had been  driving home to Ann Arbor, he had been stopped in a neighborhood well outside the direct route between the apartment complex and his home.  *Id.*  According to Armstrong, Plaintiff was unable to state why he had been pulled over in the "West Willow" neighborhood while purportedly heading home to Ann Arbor.  *Id.*  Armstrong stated that his suspicions  were also aroused when, after noting that Plaintiff was speeding and signaling for him to pull over, Plaintiff slowed down, steering toward the curb, then abruptly accelerated and re-entered a traffic lane two times before finally stopping his car.

Plaintiff disputed that his location was inconsistent with his story that he was headed home to Ann Arbor, stating that cutting through the West Willow neighborhood was the fastest route.  *Id.* at 79.  He also testified  that he first slowed down and accelerated prior to the stop because although he observed Armstrong following him and anticipated that he would be pulled over, the officer did not activate his overhead lights.  *Id.* at 81.  He stated that he slowed and accelerated a second time for the obvious reason that he was unable to

find a spot on the shoulder large enough to accommodate both his and Armstrong's vehicle. *Id.* at 82-83.

The validity of a *Terry* stop is assessed with "whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis,* 430 F.3d 345, 354 (6th Cir.2005). It must therefore be determined "(1) if the detention was 'sufficiently limited in time' and (2) if 'the investigative means used the least intrusive means reasonably available.'" *United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008). Resolving disputed questions of fact regarding these matters is better left to the jury. In this case, Plaintiff's testimony that he supplied inherently plausible reasons for his location and behavior creates a question of fact as to whether his continued detention was justifiable. Further, although not dispositive, Plaintiff's acquittal of the criminal charges indicates that the jury found his account of events at least partially plausible.

### 3. Probable Cause

Upon returning to Plaintiff's vehicle after performing the driver's licence and LEIN search, Armstrong testified that Plaintiff asked for the return of his driver's licence, stating that he was in a hurry to get home because he was working the following day, but refused to provide the name of his employer or work location. *Id.,* Exhibit 1 at 2, Exhibit 2 at 14-17. He testified that when he asked Plaintiff why, if eager to return home he had taken an apparently indirect route, Plaintiff refused to answer more questions. *Id.* Armstrong

testified that Plaintiff's evasiveness justified his request for Plaintiff to exit the car for the purpose of searching the vehicle.

Armstrong's  order to exit the car, if issued during the course of the traffic stop, would clearly not amount to a Fourth Amendment violation.[5]  "'[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures.'" *Maryland v. Wilson,* 519 U.S. 408, 412, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997)(*citing Pennsylvania v. Mimms* 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977)("additional intrusion" into "the driver's personal liberty . . .  *de minimus"*). Moreover, Armstrong's inquiries during the course of the traffic stop were proper.  "[T]he mere asking of questions during a traffic stop, even if those questions are not narrowly related to the traffic violation, is not necessarily overly intrusive." *U.S. v. Letourneau,* 944 F.Supp. 619, 623 (N.D.Ohio 1996).  However, according to Plaintiff's account, even if Defendant Armstrong was entitled to question Plaintiff and ask him to exit the car *during the course of the traffic stop*, he did not have plausible grounds for further investigation once the purpose of the stop had been completed.   While "questionable responses" to "legitimate inquiries" into matters outside the reasons for the traffic stop "justify further detention and inquiry," in the present case, a legitimate question of fact remains as to whether further

---

[5]However, in regard to the excessive force claims, *infra,* Plaintiff testified that Armstrong directed him to exit his car for the purpose of allowing officers to search the vehicle.  *Docket #38,* Exhibit 2 at 104.

detention and inquiry was justified   *Id.*

In addition, there is conflicting evidence as to whether the Defendants had probable cause for the search or arrest.  *Armstrong* testified that one of the backup officers called to the scene (Defendant Rowley) observed what he believe to be marijuana residue on the floorboard of the car.  *Docket # 38,* Exhibit 2 at 48.   Defendants contend that Rowley's observation of what he believed was marijuana in "plain view" on the vehicle's floorboard gave Defendants probable cause to search the vehicle.  "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980).  Armstrong testified that he then requested a LEIN computerized criminal history of Plaintiff which showed  a previous drug conviction. *Id.,* Exhibit 1 at 3, Exhibit 2 at 30.   He states next that Plaintiff ignored commands to turn off the ignition and exit the vehicle,  and instead, "rolled up the windows and locked the doors." *Id.*  Exhibit 1 at 3, Exhibit 2 at 48.  Armstrong testified that during the course of the next 10 to 15 minutes, Plaintiff would partially open  the driver's side window while officers attempted to negotiate with him to leave the car. *Id.,* Exhibit 2 at 28.  Armstrong claims that while Plaintiff was  addressing officers positioned on the passenger side of the car, he took the opportunity to reach into the partially opened driver's side window to turn off the ignition. *Id.* at 28.   He claims further that Plaintiff promptly rolled up the electrically operated window, lodging Armstrong's left arm in the window. *Id.* Armstrong stated that he responded by using the flashlight held in his right hand to break the

window.  *Id.*   Armstrong testified that Plaintiff was then pulled out through the broken

window.  *Id.* at 29.

Conversely, *Plaintiff's* version of the same occurrence suggests that Rowley

deliberately manufactured grounds for a probable cause search of the vehicle by falsely

claiming to observe marijuana through the closed passenger side window.  Plaintiff testified

that immediately after he refused Armstrong's request to search the car,  Defendant Rowley,

standing on the passenger side of the car, stated that he could "see marijuana in the car."

*Docket #2,* Exhibit 2 at 86.  Plaintiff, noting that all of the windows in his car other than the

driver's side window were tinted,  was then told by Armstrong that he "now" had "probable

cause to search [the] car."  *Id.* at 86-87.   Plaintiff, aware that he was not carrying drugs,

testified that he was fearful Defendants intended to plant drugs in his car to support a "plain

view" search.  *Id.* at 88.  Plaintiff stated that he rolled the driver's side window up, but

continued to communicate through the closed window, denying that he had drugs in the car.

In support of Plaintiff's version of events, Defendant Armstrong conceded that a search of

the car following Plaintiff's arrest came up empty for narcotics.  *Id.*  at 46.

"In general, the existence of probable cause in a § 1983 action presents a jury

question, unless there is only one reasonable determination possible."  *Fridley v. Horrighs,*

291 F.3d 867, 872 (6th Cir.2002).  *See also Parsons v. City of Pontiac* 533 F.3d 492, 500 -

501 (6th Cir. 2008).  Here, the conflicting testimony lends itself to competing determinations

as to whether Armstrong had probable cause or whether he made the whole thing up.  A jury

in Plaintiff's criminal trial apparently resolved some of the credibility conflicts adversely to

Armstrong, albeit under a reasonable doubt standard.  But even under the preponderance of the evidence standard applicable to the present case, the question of probable cause must be entrusted to the trier of fact.  *See Chancellor v. City of Detroit*, 454 F.Supp.2d 645, 648 -649 (E.D.Mich., 2006)(denying summary judgment where there was a question of fact as to whether defendant police officers lied in order to fabricate probable cause).

### 4.  Excessive Force Claims and the Legality of Plaintiff's Arrest

Similarly, factual disputes regarding the circumstances surrounding Plaintiff's arrest foreclose summary judgment on the excessive force claims.  A claim of excessive force brought by a free individual, such as the Plaintiff was at the time of his arrest, is analyzed, like the traffic stop, under the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness.  *Graham v. Connor, supra*.  That standard is objective, and is applied without reference to the officer's subjective motivations.  *Id*.  In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

-14-

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. 109 S.Ct. at 1871.  The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).  A court must recognize that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397, 109 S.Ct. at 1872.

I am unable to find as a matter of law that Defendants' behavior was reasonable. As discussed above, the investigative stop of Plaintiff alone, based on reasonable suspicion that criminal activity was afoot, does not amount to a Fourth Amendment violation. *Terry v. Ohio*, *supra*.  Defendants go on to argue that in light of the events subsequent to the stop, the force used in arresting Plaintiff was not excessive and that probable cause existed to arrest Plaintiff for fleeing and eluding as well as resisting and obstructing arrest. *Docket #38,* Exhibit 2 at 74.  However, there is a dramatic conflict in the evidence regarding these subsequent events.

As noted above, Defendant Armstrong testified that he and other officers attempted to negotiate with Plaintiff for at least ten minutes in an attempt to convince him

-15-

to leave the car peaceably before breaking the driver's side window and forcibly removing Plaintiff through the window.  *Id.* at 37.   Armstrong testified that when he attempted to turn off the ignition by reaching into the partially opened driver's side window, Plaintiff rolled the window up, lodging Armstrong's left arm in the window.  *Id* at 28.  Armstrong testified that he freed his arm by using a flashlight held in his right hand to break the window, also allowing officers to pull Plaintiff from the window.  *Id.* at 28-29.  Armstrong conceded  Plaintiff's testimony that he  expressed his fear to Armstrong that drugs would be planted in his car, agreeing to a vehicle search on the condition that officers "walk the dog around the car, and if the dog indicates that there's drugs in here, I'll get out of the car and let you search it."  *Id.*  at 88.

However, Plaintiff's testimony contradicts Armstrong's claim that he and other officers negotiated with Plaintiff continually for ten minutes.   Instead,  Plaintiff stated that he agreed to a search of his car provided that a supervising officer was present, believing that the officers would not plant drugs in his car in the presence of their "boss."  *Id.* at 89.   Plaintiff testified that upon making this request, Defendants Armstrong and Rowley "went to the back of [his] car and started conversing with the other officers."  *Id.*  Plaintiff, assuming that the officers were awaiting the arrival of a supervisor, testified that he "had [his] head down," praying, until five to ten minutes later when officers, without warning, used a baton to break the *fully* closed driver's side window.  *Id.* at 90.  Plaintiff testified that at the same time, he heard someone saying "I'm tired of fucking around."

*Id.*  Plaintiff denied Armstrong's claim that he was pulled from the window, testifying instead that he "stepped one foot out of the car and then the other officer came and grabbed me out the door.  They didn't pull me through a window."  *Id.*

If the Plaintiff was actively resisting arrest and closed the window on Armstrong's arm, and Armstrong reasonably believed that he was in danger of physical harm and that Plaintiff was trying to escape, then the force used was appropriate to the situation.  But if the Plaintiff's version is accepted, and he was merely sitting in his car when Armstrong and the other deputies broke the closed window and forcibly dragged him out of the car, then a jury could find that the amount of force was excessive under the circumstances. In addition to Plaintiff's own testimony at his criminal trial, key factual disputes as to what happened, found within the Defendants' own exhibits, foreclose summary judgment on the excessive force claim.

First,  Defendant Rowley's testimony that he observed  marijuana on the floorboard of the vehicle stands at odds with the fact that the closed tinted window on the car's passenger side might have either partially or completely obscured his view of the vehicle's interior.  Rowley's testimony, based on his "eight years of training and experience," that he nonetheless believed he saw marijuana seeds and drug paraphernalia (at just the moment Armstrong needed probable cause for a search) is undermined by the fact that the subsequent search turned up neither marijuana nor drug paraphernalia.  *Id.* at 66.  Second,  Armstrong's claim that he reached into the open driver's side window to

turn off the ignition, then broke the window with a flashlight in his *right* hand after Plaintiff pinned his left arm by closing the window, is undermined by his failure to explain why he attempted to use his non-dominant (left) hand to reach into the car to perform an exclusively right-handed function.  *Id.* at 43.

Third, although Armstrong claimed that Plaintiff was pulled through the driver's side window because officers "didn't feel it was safe to take the extra second to [unlock the door]," Plaintiff's emergency room report contains no indication that he sustained lacerations to the torso as would be expected if pulled through a broken car window.  *Id.* at 31, Exhibit 4 at 2.  To the contrary, treating notes showing small facial and hand abrasions support Plaintiff's account that he was injured by airborne glass when the window was shattered rather than by being pulled over glass shards.  *Id.,* Exhibit 4 at 2.

At oral argument, counsel for Defendant Armstrong argued that even if Plaintiff's version of events were taken as true, Armstrong is entitled to summary judgment because he had no personal involvement in Plaintiff's alleged injuries.  Defendant cited deposition testimony in a separate case against City of Ypsilanti defendants, to the effect that while it was Armstrong who broke the car window, other officers removed the Plaintiff from the car.  Thus, he argues, the Plaintiff has alleged nothing more than a property damage claim.  Defendant also argues that Plaintiff previously testified that none of his injuries were attributable to Armstrong or Washtenaw County deputies.  These arguments are unavailing.

-18-

Both parties agree that Armstrong broke the window.  However, if Plaintiff's version is taken as true–as it must be in a summary judgment motion–then Armstrong, lacking probable cause, initiated and encouraged a course of joint conduct with the other officers that resulted in the use of excessive force.

Further, Defendant misconstrues the Plaintiff's deposition testimony in the Ypsilanti case.  In fact, Plaintiff testified that he had no *ongoing* physical injuries, but that he in fact had glass broken in his face, and he had continuing emotional/psychological injuries:

> Q: Do you claim any kind of a physical injury in your other case, the one against the Washtenaw County Sheriff's Department?
>
> A: No.
>
> Q: Because I think weren't you claiming that you got some glass in your ear or your eye - -
>
> A: Yes.
>
> Q:  - -or something like that?
>
> A: Yes.
>
> Q: But you don't have any *ongoing* injuries from that?
>
> A: No.

*Defendants' Motion, Docket #38, Exhibit 8, p. 58.* (Emphasis added).

Plaintiff went on to say that he suffered ongoing emotional distress as a result of the Washtenaw County deputies' actions. *Id.*

Likewise, because questions of fact remain as to whether probable cause existed for the car search and Plaintiff's arrest, as well Defendants' motives in pursuing the search, arrest, and charges, the Fourth Amendment / § 1983 claims of malicious prosecution and abuse of process should survive the present motion. [6] *Barnes v. Wright,* 449 F.3d 709 (6th Cir.2006); *see also  Vallance v. Brewbaker*, 161 Mich.App. 642, 646, 411 N.W.2d 808 (1987)**;** *Ahlers v. Schebil,* 966 F.Supp. 518, 531 (E.D.Mich.1997)(Rosen, J.).

### C.  Substantive Due Process Claims

Plaintiff also alleges substantive due process violations under the Fourteenth Amendment.  Pursuant to *Graham, supra,* 490 U.S. at 395, 109 S.Ct. at 1871, claims of excessive force "in the course of an arrest, investigatory stop, or other seizure of a free citizen" are analyzed under the Fourth Amendment rather than "the more generalized notion of substantive due process."

_____

[6]

The Supreme Court in *Wallace v. Kato* 549 U.S. 384, 390 (fn2), 127 S.Ct. 1091, 1096,  166 L.Ed.2d 973 (2007) noted that it has "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983 . . . and we do not do so here."  *See also Albright v. Oliver,* 510 U.S. 266, 270-271, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion).  The Sixth Circuit has recognized a "constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). Case law from this district supports the conclusion that Plaintiff's malicious prosecution and abuse of process claims are cognizable under the Fourth Amendment.  *Ahlers v. Schebil,* 966 F.Supp. 518, 531 (E.D.Mich.1997)(Rosen, J.).

Because the Supreme Court has "explicitly refused to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause," Plaintiff's claim "must be brought under the Fourth Amendment." *Wilson v. City of Livermore,* 1 Fed.Appx. 334, 337 (6th Cir. 2001)(*citing Albright v. Oliver*, 510 U.S. 266, 268, 273, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994).

### D. Equal Protection

Plaintiff, an African-American, alleges that his traffic stop and ensuing arrest were the result of racial profiling. *Amended Complaint* at ¶42b. Thus, his claim sounds in the Equal Protection Clause of the Fourteenth Amendment. *Whren, supra,* 517 U.S. 806, 813, 116 S.Ct. at 1774 ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment").

The Equal Protection Clause  states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C. Const. Amend. XIV § 1.  "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); 42 U.S.C. §1981. The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id*.; *Vacco*, at 521 U.S. at 799, 117 S. Ct. at 2297.   In order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal

protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was "intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999).

In establishing a case of selective enforcement, the claimant "must demonstrate through 'direct, circumstantial, or statistical evidence,' that he was subjected 'to unequal treatment based upon [his] race or ethnicity.'" *Shahit v. City of Detroit Police Officer Tosqui*, 2005 WL 1345413, *16 (E.D.Mich.,2005)(Zatkoff, J.)(*citing United States v. Saucedo,* 226 F.3d 782, 790 (6th Cir.2000) and *Farm Labor Organizing Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 533 (6th Cir.2002)). "[I]n making "a case of selective enforcement, the plaintiff 'must establish that the challenged police action 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Zerod v. City of Bay City,* 2006 WL 618874, *2 (E.D.Mich.2006)(Lawson, J.)(*citing Bennett v. City of Eastpointe,* 410 F.3d 810, 818 (6th Cir.2005)(internal citations omitted). "'To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.'" *Farm Labor Organizing Committee v. Ohio State Highway Patrol, supra*, 308 F.3d at 534 (citing *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 1487, 134 L.Ed.2d 687 (1996)). "Discriminatory purpose can be shown by demonstrating that the 'decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Farm Labor Organizing Committee,* at 534 (*citing Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct.

1524, 1532, 84 L.Ed.2d 547 (1985)). "The claimant's burden to demonstrate discriminatory purpose and effect 'is a demanding one' given the 'strong presumption that the state actors have properly discharged their official duties.'" *Shahit* at \*16 (*citing Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir.2000).

Defendant Armstrong denied that on the night in question, he began following Plaintiff because he was black.  He stated that at the time he began the pursuit, he "did not observe the occupants of the vehicle, just the vehicle itself," also noting that Plaintiff was traveling at speeds "well in excess of" the 25 m.p.h. speed limit." *Docket # 38,* Exhibit 2 at 11, 39. While Plaintiff denies that he was speeding, he has presented no evidence to support his subjective belief that Armstrong's actions were racially motivated.  The Equal Protection claim must therefore be dismissed.

### E.  Qualified Immunity

As to the constitutional claims where there are questions of material fact, the individual Defendants are not entitled to dismissal on the basis of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), holds that a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful.  In  *Saucier*, the inquiry is sequential, requiring the district court to first consider whether there was a constitutional violation.  *See also Baranski v. Fifteen Unknown Agents of the BATF,* 452 F.3d 433, 438 (6th Cir.2006) (en banc).

-23-

Of course, in *Pearson v. Callahan*, __ S.Ct. __, 2009 WL 128768 (2009), decided on January 21, 2009, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases:

> "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson*, slip op. at 9.  Likewise here, the *Saucier* analysis "facilitate[s] the fair and efficient disposition" of the  immunity question. *Id.,* slip op. at 17.

Because questions of fact exist as to whether Plaintiff's Fourth Amendment rights were violated, Defendants do not meet the first prong of the *Saucier* test.  Defendants also make the circular argument that "[n]o prior caselaw existed that held a constitutional violation for a traffic stop where an officer established both probable cause and reasonable suspicion . . ." *Defendants' Brief* at 19.  Yet here, there are questions of fact as to whether probable cause *was* established. *See Chancellor v. City of Detroit* 454 F.Supp.2d 645, 659 (E.D.Mich.. 2006) ("Because the Defendants' qualified immunity claim is based on the false premise that their probable cause determination was unassailable, it rests on a foundation of sand").  Moreover, Plaintiff's allegations regarding excessive force, violation of equal protection rights, and the

illegal vehicle search describe clearly established rights. When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity." *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir.1989); *Bouggess v. Mattingly* 482 F.3d 886, 888 (6th Cir. 2007).

### F. Defendant County of Washtenaw

Defendants argue first that because the case docket indicates that Defendant County of Washtenaw was "terminated" as of July 13, 2006, there is no basis for the municipal claims to proceed. *Defendants' Brief* at 19. This argument is without merit. On January 25, 2007, the Honorable David L. Lawson issued a stipulated order allowing Plaintiff to file an amended complaint. *Docket #24.* The amended complaint, filed on January 23, 2007, names the County as a Defendant. *Docket #23.* However, I agree with Defendants' secondary argument that the Amended Complaint is absent factual allegations showing either personal involvement by supervisors or a policy of unconstitutional behavior. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not set forth any facts to support a finding that the Defendant County has any policy or custom which resulted in the violation of constitutional rights, or that the County has failed to properly train its police force. Further, even assuming that it will be shown that Defendants Armstrong and Rowley violated Plaintiff's constitutional rights, both the Supreme Court and the Sixth Circuit have held that a single incident of the use of excessive force cannot by itself support an inference of a customary practice sufficient to justify municipal liability under § 1983. *Oklahoma City*

*v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988).  Likewise, under *Tuttle*, "the fact that only a single unconstitutional act is alleged supports a conclusion that the act in question was not caused by a policy or that the need for heightened training or screening was not obvious." *Johnson v. City of Detroit, supra,* 944 F.Supp. 586, 599 (E.D. Mich 1996)(Gadola, J.).[7]

### G.  State Law Claims[8]

Plaintiff alleges the state law claims of false imprisonment/false arrest, intentional and/or negligent infliction of emotional distress, and malicious prosecution.  *Amended Complaint* at ¶¶43-58.  The state claims are considered individually.[9]

---

[7]

Likewise, the allegations against the County fail to the extent that the complaint can be construed to also state a claim of *respondeat superior* or vicarious liability.  Defendant County enjoys governmental immunity pursuant to M.C.L. 691.1407(1) which states that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  Plaintiff has submitting nothing to support a conclusion that the County was acting outside of its authority during the course of the events in question.

[8]

Allegations regarding violations of the Michigan Constitution fail as a matter of law.  The Michigan Supreme Court has held that "inasmuch as other avenues of relief are available, there is no 'damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee.'" *HRSS, Inc. v. Wayne County Treasurer,* 279 F.Supp.2d 846, 851 (E.D.Mich. 2003) *citing Jones v. Powell,* 462 Mich. 329, 612 N.W.2d 423, 426 (2000)(Cleland, J.).

[9]

Defendants argue that Plaintiff has "waived" his state law claims by repeatedly stating in his

-26-

**1.  False Imprisonment/False Arrest**

To make out a claim of false arrest or false imprisonment, "the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause." *Tope v.Howe*, 179 Mich.App. 91, 105, 445 N.W.2d 452 (1989).   "False arrest or imprisonment is arrest or imprisonment (1) of a person (2) who is innocent of the charge on which he is arrested (3) by the defendant or at his instigation [and] (4) without legal justification." *Lewis v. Farmer Jack Div. Inc.* 415 Mich. 212, 232, 327 N.W.2d 893, 901 (1982). *Lewis v. Farmer Jack Div. Inc.* 415 Mich. 212, 232, 327 N.W.2d 893, 901 (1982).   As discussed above, a question of fact remains as to all the elements of this claim.

Plaintiff's false arrest claim must nevertheless be dismissed under the statute of limitations. Under M.C.L. § 600.5805, the statute of limitations for false imprisonment is two years. *See Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005). Plaintiff's claim of false arrest or imprisonment[10] accrues on the date of his arrest. *Id.; Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007).   Because Plaintiff did not file suit in this Court until three years after the date of his arrest, his state law claim of false arrest is time barred.

---

discovery answers that "all his state tort claims were claims under the Fourth and Fourteenth Amendments." *Docket #38,* Exhibits 9-10.  However, Defendants cite no case law to support the argument that Plaintiff's inadequate interrogatory answers amount to a waiver of the state law claims.  *See U.S. v. Abernathy*,  2009 WL 55011, *3 (E.D.Mich.,2009); *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir.1993)("Judges are not...required to construct a party's legal arguments for him.").  Accordingly, I will consider Plaintiff's state law claims on their merits.

[10] For purposes of this case, false arrest and false imprisonment are synonymous. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).

### 2.  Gross Negligence/Negligence

To the extent Plaintiff alleges merely negligent behavior, Michigan's Government Tort Liability Act ("GTLA"), M.C.L. 691.1407, provides that state or local governmental agents or employees (including police officers) are "immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service...."  However, §1407(2)(c) excludes acts which amount to "gross negligence."  "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." § 1407(7)(a).

However, Plaintiff in this case has alleged intentional, not negligent conduct.  In *VanVorous v. Burmeister*,  262 Mich.App. 467, 483-484, 687 N.W.2d 132, 143 (2004), the court set forth Michigan's rule that intentional torts not be characterized as "negligence" or "gross negligence" claims:

> "[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence. *Smith v. Stolberg,* 231 Mich.App. 256, 258-259, 586 N.W.2d 103 (1998); *Sudul v. Hamtramck,* 221 Mich.App. 455, 458, 477, 562 N.W.2d 478 (1997)."

*VanVorous* also noted that the plaintiff's gross negligence claim was subsumed within his excessive force claim.

Accordingly, Plaintiff's state law negligence claims, including gross negligence, must be dismissed.

### 3.  Intentional and/or negligent infliction of emotional distress

Plaintiff's claim of *negligent* infliction of emotional distress is subject to dismissal.

-28-

A claim of negligent infliction of emotional distress ("NIED") must include the following elements:

> "(1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not present, at least shock 'fairly contemporaneous' with the accident."

*Aureus Holdings, Ltd. v. City of Detroit,* 2006 WL 1547639, *9, FN26 (E.D.Mich.,2006) (Cohn, J.) ( *citing Hesse v. Ashland Oil, Inc.,* 466 Mich. 21, 34, 642 N.W.2d 330, 337 (2002)). The Complaint has failed to meet even one element of a NIED claim.

In contrast, a question of fact remains as whether Defendants are liable for the *intentional* infliction of emotional distress. To establish a Michigan common law claim of intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse

-29-

his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.   The claim that Armstrong and Rowley supplied pretextual reasons for searching Plaintiff's vehicle and falsely charged Plaintiff with fleeing and eluding and resisting and obstructing arrest can be characterized as outrageous behavior.[11]

### 4. Malicious Prosecution

In *Matthews v. Blue Cross Blue Shield of Michigan*, 456 Mich. 365, 378, 572 N.W.2d 603 (1998), the Michigan Supreme Court described the following elements of malicious prosecution: (1) that the defendant initiated a criminal prosecution against the plaintiff, (2) that the criminal proceedings terminated in the plaintiff's favor, (3) that the person who initiated the prosecution lacked probable cause to do so, and (4) that the action was taken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.   As discussed in reference to the federal (Fourth Amendment) malicious prosecution claim, the factually supportable allegations against the individual Defendants establish malicious prosecution under this standard.

### IV.  CONCLUSION

For these reasons, I recommend the following:

---

[11] Defendants' arguments for dismissal of the intentional state law counts on the ground of immunity under M.C.L. 691.1407 is unavailing. At oral argument, defense counsel cited a recent Michigan Supreme Court Case, *Odom v. Wayne County*, 482 Mich. 459, __N.W.2d__, 2008 WL 5505413 (2008), for the proposition that a state defendant may have immunity for even an intentional tort. However, to have immunity in relation to an intentional tort, *Odom* requires the defendant to show that "the acts were undertaken in good faith, or were not undertaken with malice." *Id.*, at *9. Falsifying a police report to manufacture probable cause cannot be considered an action taken in good faith.

Count I: Defendants' motion should be GRANTED, as to state law claims of negligence and gross negligence.

Count II: The motion should be GRANTED as to state law claims of negligent infliction of emotional distress and DENIED as to the intentional infliction of emotional distress claim.

Count III: The motion for dismissal of the state law claim of malicious prosecution should be DENIED.

Count IV: The motion for dismissal of the state claim of false imprisonment/false arrest should be GRANTED.

Count V: The motion for dismissal of Plaintiff's Due Process and Equal Protection claims under the Fourteenth Amendment should be GRANTED.

Count VI: The motion for dismissal of the Fourth Amendment claims, including excessive force should be DENIED.

Count VII: The motion for dismissal of the federal / Fourth Amendment claim of malicious prosecution/abuse of process should be DENIED.

Count VIII:   The motion for dismissal of the municipal liability claims against the County of Washtenaw should be GRANTED.

I further recommend that the Washtenaw County Sheriff's Department be DISMISSED as a Defendant.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  February 18, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 18, 2009.

s/Susan Jefferson
Case Manager